# UNITED STATES DISTRICT COURT

## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 – Fax

September 3, 2013

W. James Nicoll
Jenkins, Block & Associates, P.C.
1040 Park Avenue, Suite 206
Baltimore, MD 21201

Alex S. Gordon, Esq.
Office of the United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, MD 21201

> Re:  Nancy E. Mench v. Commissioner Michael J. Astrue
> Civil No. SKG 12-01184

Dear Counsel:

Plaintiff, Nancy E. Mench, by her attorneys, W. James Nicoll and Jenkins, Block & Associates, filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), who denied her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under sections 405(g) and 1631(c)(3) of the Social Security Act ("the Act") respectively. This case has been referred to the undersigned Magistrate Judge by consent of the

parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301. No
hearing is necessary. Local Rule 105.6.

Currently pending before the Court are cross motions for
summary judgment and plaintiff's request for remand in the
alternative. The Court has concluded that under the applicable
law, the ALJ did not err in finding Ms. Mench ineligible for
disability. For the reasons that follow, the Court hereby DENIES
plaintiff's motion for summary judgment, GRANTS defendant's
motion for summary judgment, and AFFIRMS the decision of the
Administrative Law Judge ("ALJ").

## I.    Procedural History

Plaintiff has applied for SSI and DIB benefits on three
occasions. The first application, on May 19, 2005, alleged that
she became unable to work on May 12, 2005 because of limitations
resulting from coronary artery disease, obesity, degenerative
disc disease, chronic venous insufficiency, and facet syndrome
in the cervical spine. (R. 48-50). The application was denied at
the initial level and upon reconsideration. (R. 48). After a
hearing on September 26, 2006, ALJ Edward J. Banas issued an
opinion on January 6, 2007 denying benefits for Ms. Mench. (R.
48-55). ALJ Banas found that Ms. Mench's coronary artery disease
was stable, but her other limitations restricted her to
sedentary work with some additional limitations; however, based
on the testimony of the vocational expert ("VE"), he determined

that there were jobs available in the national economy that she could perform, therefore precluding an award of benefits. (R. 50-55). Because this decision was not appealed, it is final and binding.

On May 24, 2007, Ms. Mench filed a second application for SSI and DIB benefits, alleging the same onset date of May 12, 2005. Because the aforementioned decision of ALJ Banas is final and binding, Ms. Mench's second application was limited to the period beginning on the day after the issuance of ALJ Banas' decision, January 7, 2007.[1] These claims were denied initially on August 24, 2007 and upon reconsideration on July 3, 2008. (R. 20). On August 27, 2008, Ms. Mench requested a hearing, and the hearing was held on October 27, 2009 in front of ALJ Melvin D. Benitz. Id. ALJ Benitz found that based on the VE's testimony, there were jobs available in the national economy that accommodated Ms. Mench's limitations and denied her appeal. (R. 70-76).

Ms. Mench appealed ALJ Benitz's decision to the Appeals Council, and the Appeals Council remanded to ALJ Benitz for review on May 11, 2010.[2] (R. 20). During the appeal process for

[1] When a claimant files a subsequent application that claims disability existed during a previously adjudicated period where none was found, the principle of preclusion bars the reconsideration of the prior period. See Albright v. Comm'r of the Social Security Administration, 174 F.3d 473, 476 n.4 (4th Cir. 1999).

[2] The Appeals Council remanded for resolution of the following issues: 1) failure to adequately address AR 00-1(4), and 2) failure to address treating physician Dr. Krump's opinion. The Appeals Council also requested ALJ Benitz

her application dated May 24, 2007, Ms. Mench filed a third application for SSI and DIB benefits on March 23, 2010. (R. 84). The Appeals Council considered the third application to be a duplicate of the second application and ordered ALJ Benitz to merge the applications and consider the March 23, 2010 application in conjunction with his revised ruling on the May 24, 2007 application. (R. 84). On November 9, 2010, another hearing was held in front of ALJ Benitz, and his second opinion incorporating the mandates from the Appeals Council, dated December 17, 2010, again found Ms. Mench able to hold a job available in the national economy and denied her application for SSI and DIB benefits. (R. 20, 38-39).

The Appeals Council denied plaintiff's request for review of ALJ Benitz' December 17, 2010 opinion on March 26, 2012, making the ALJ's decision the final decision of the agency. (R. 8-10). Plaintiff now seeks review of that decision pursuant to 42 U.S.C. § 405(g).

## II.  Factual History

The Court has reviewed the Commissioner's Statement of Facts and, finding that it accurately represents the record in all material respects, hereby adopts it in full. The Commissioner's Statement of Facts did not include Ms. Mench's

---

give further consideration to Ms. Mench's RFC with specific references to the record, obtain additional medical evidence, if necessary, and include the subsequent claim (dated March 23, 2010) in his revised opinion.(R. 83-84).

mental health records, stating the mental health concerns were not relevant to this Court's evaluation of ALJ Benitz's decision. The Court mostly agrees but finds the following information relevant to this appeal.

Ms. Mench was treated by doctors and counselors at the Kent County Behavioral Health Center approximately monthly beginning in February 2007. (R. 554). Dr. Peimer, however, prescribed Ms. Mench's mental health medications. (R. 508). The record contains a string of records from these visits. See, e.g., (R. 499, 508, 625, 644, 667, 671, 683, 685). On the following dates, Ms. Mench's condition was listed as some variation of "stable," "stable on meds," "meds helping," or "improve[ing]": December 2, 2007; March 24, 2008; April 14, 2008; July 7, 2009; November 10, 2009; December 14, 2009; August 16, 2010; October 4, 2010. Id. This is not an exhaustive list of Ms. Mench's mental health history, but provides sufficient background information for the purposes of this opinion.

### III. ALJ Findings

In reviewing a claimant's eligibility for SSI, an ALJ must consider all of the evidence in the record and follow the sequential five-step analysis set forth in the regulations to determine whether the claimant is disabled as defined by the

Act. 20 C.F.R § 416.920(a).[3] If the agency can make a disability
determination at any point in the sequential analysis, it does
not review the claim further. 20 C.F.R. § 404.1520(a)(4). After
proceeding through each of the required steps, the ALJ in this
case concluded that Ms. Mench was not disabled as defined by the
Act. (R. 40).

At the first step, the claimant must prove that he or she
is not engaged in substantial gainful activity.[4] 20 C.F.R. §
416.920(a)(4)(i). If the ALJ finds that the claimant is engaged
in substantial gainful activity, he or she will not be
considered disabled. Id. Here, ALJ Benitz found that Ms. Mench
had not engaged in any substantial gainful activity after
January 7, 2007, the adjusted alleged onset date. (R. 23).

At the second step, the ALJ must determine whether the
claimant has a severe, medically determinable impairment or a
combination of impairments that limit his ability to perform
basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); see
also 20 C.F.R. §§ 404.1521, 416.921. In addition, there is a

---

[3] Disability is defined in the Act as the "inability to engage in any
substantial gainful activity by reason of any medically determinable physical
or mental impairment which can be expected to result in death or has lasted
or can be expected to last for a continuous period of not less than 12
months." 42 U.S.C. § 416(i)(1)(A).

[4] Substantial gainful activity is defined as "work activity that is both
substantial and gainful." 20 C.F.R. § 416.972. Work activity is substantial
if it involves doing significant physical or mental activities and even if it
is part time or if plaintiff is doing less, being paid less, or has fewer
responsibilities than when she worked before. 20 C.F.R. § 416.972(b).
Substantial gainful activity does not include activities such as household
tasks, taking care of oneself, social programs, or therapy. 20 C.F.R. §
416.972(c).

durational requirement that the claimant's impairment last or be expected to last for at least 12 months. 20 C.F.R. § 416.909. Here, ALJ Benitz found that the medical evidence of record, considered in the aggregate, supported the conclusion that Ms. Mench's cervical and lumbar degenerative disc disease, depression, peripheral artery disease, and coronary artery disease caused significant limitation on her ability to perform work activities. (R. 23). He also found that her alleged limitations of headaches and obesity were non-severe, because there was no evidence in the record that either caused more than a minimal limitation on her ability to perform work activities. Id.

At the third step, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If one of the Listings is met, disability will be found without consideration of age, education, or work experience. 20 C.F.R. § § 404.1520(d), 416.920(d). Here, ALJ Benitz found that Ms. Mench does not have an impairment or combination of impairments that meet or equal an impairment enumerated in the "Listing of Impairments." (R. 24).

More specifically, in this opinion, ALJ Benitz reviewed Listings 12.04 (affective disorder). (R. 24). In his previous

opinion, ALJ Benitz reviewed Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), and 4.04 (ischemic heart disease), 12.04 (affective disorder), and 12.06 (anxiety-related disorders). (R. 66-68).

In order to meet Listing 12.04 (affective disorder), the claimant must meet the requirements in either both "paragraph A" and "paragraph B" or "paragraph C" alone. 20 C.F.R. § 404, Subpart P, Appendix 1. To satisfy "paragraph A" criteria, the claimant must show medically documented persistence of depressive syndrome, manic syndrome, or bipolar syndrome. Id. To satisfy "paragraph B" criteria, the claimant must show at least two of the following criteria: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation of extended duration. Id. Where a "marked" level is required, it means more than moderate but less than extreme. Id.

ALJ Benitz found that Ms. Mench did not satisfy "paragraph B" requirements because she has only moderate restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence or pace. (R. 24). With regard to the final factor, ALJ Benitz found that Ms. Mench has not experienced any episodes of decompensation of extended duration. (R. 25). Because Ms.

Mench does not have at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the ALJ found that the "paragraph B" criteria are not met. Because "paragraph B" criteria are not met, satisfaction of "paragraph A" criteria is irrelevant.

To satisfy "paragraph C" criteria, the claimant must show a medically documented history of the affective disorder of at least two years that has caused more than minimal limitation of ability to do basic work activities, "with symptoms or signs currently attenuated by treatment or psychosocial support." 20 C.F.R. § 404, Subpart P, Appendix 1. In addition, the claimant must show at least one of the following: repeated episodes of decompensation of extended duration, a disease process that indicates that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate, or a current history of an inability to function outside of a highly supportive living arrangement. Id.

ALJ Benitz concluded that Ms. Mench did not satisfy "paragraph C" requirements. (R. 25). He found that the record was devoid of evidence that established repeated episodes of decompensation, potential episodes of decompensation, or Ms. Mench's inability to function outside of a highly supportive environment. (R. 25).

Before an ALJ advances to the fourth step of the sequential analysis, she must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling (SSR) 96-8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining a claimant's RFC, ALJs evaluate the claimant's subjective symptoms, such as allegations of pain, using a two-part test. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that first showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment

than is shown by solely objective medical evidence. SSR 96-7p.
To assess credibility, the ALJ should consider factors such as
the claimant's daily activities, treatments he has received for
his symptoms, medications, and any other factors contributing to
functional limitations. Id.

Here, ALJ Benitz determined that Ms. Mench has the residual
functional capacity to perform sedentary to light work as
defined in 20 C.F.R. 416.1567(a-b) and 20 C.F.R. 416.967(a-b)
with some additional limitation. (R. 25). Specifically, she is
"limited to simple, routine unskilled jobs that involve low
concentration and low memory defined as no decision making
requirements, no changes in the work setting, not much judgment,
and no production pace work." Id. ALJ Benitz also determined
that Ms. Mench is able to "attend tasks and complete schedules,"
lift ten pounds frequently and twenty pounds occasionally, sit
for thirty minutes and stand for twenty to thirty minutes at a
time on an alternate basis for eight hours per day, five days
per week, but should avoid exposure to heights and hazardous
machinery, temperature and humidity extremes, stair climbing,
ropes and ladders, and should not undertake any overhead
reaching or repetitive neck turning. Id. ALJ Benitz also limited
Ms. Mench to jobs that allow her the ability to elevate her legs
with minimal weight bearing. Id.

ALJ Benitz determined that Ms. Mench had medically
determinable impairments that could reasonably be expected to
cause the alleged symptoms, but ultimately decided that her
statements regarding the intensity, persistence, and limiting
effects of her symptoms were not credible. (R. 31-32). In making
this determination, ALJ Benitz relied upon objective medical
evidence in the record, the claimant's testimony (regarding both
her limitations and her ability to perform daily living
activities), and the opinions of each treating and evaluating
physician. (R. 33-38). ALJ Benitz included an explanation for
the weight he gave to each physician's opinion as a part of his
RFC analysis.[5] Id.

With regard to Ms. Mench's degenerative disc disease, ALJ
Benitz found no objective medical evidence in the record to
support the limitations Ms. Mench alleges. (R. 32). He relied on
an unremarkable MRI performed on July 5, 2007, physical
examinations by Drs. Barrish and White that indicated lesser
limitation than alleged by Ms. Mench, and testimony from
treating physician Dr. Callahan that Ms. Mench admitted
improvement in pain after receiving steroid injections. Id. ALJ
Benitz considered Ms. Mench's subjective complaints when
limiting her ability to perform work activities at the sedentary

---

[5] The Appeals Council remand included an order for ALJ Benitz to include an
evaluation of Dr. Klumpp's opinion in accordance with the treating physician
rule. His revised opinion includes an adequate assessment of her opinion in
conjunction with the remainder of the record.

to light exertion level despite the absence of objective evidence to support her claims. Id. In determining the limitations resulting from Ms. Mench's back and neck pain, ALJ Benitz relied on the testimony of Drs. Rudin, Robbins, Callahan, Barrish, White, and Peimer. (R. 33-38).

With regard to Ms. Mench's depression, ALJ Benitz also found the objective medical evidence insufficient to support the severity and intensity alleged by Ms. Mench. Id. He relied on examinations by Drs. Anderson and Schuerholz that evaluated Ms. Mench's concentration and memory to be adequate and her anxiety to manifest in only mild to moderate symptomology. (R. 32). He also considered evidence in the record that showed Ms. Mench's depression improved with the use of medication and that she was able to perform daily living activities like preparing meals, washing laundry, and shopping. (R. 33). ALJ Benitz also relied upon the opinions of Drs. Wessel, Klumpp, Anderson, and Schuerholz in evaluating the impacts of Ms. Mench's depression and anxiety on her RFC. (R. 33-38).

With regard to Ms. Mench's coronary artery disease ("CAD") and peripheral artery disease ("PAD"), ALJ Benitz found that there was no objective medical evidence in the record that suggested Ms. Mench's CAD and PAD were severe enough to prevent her from performing all work activities. (R. 32). Despite the lack of medical evidence, he considered her stated limitations

when requiring any potential job to allow her to elevate her legs while working and require that she bear weight on her legs minimally. Id.

At the fourth step of the sequential analysis, the ALJ must consider whether the claimant retains the RFC necessary to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ concluded that Ms. Mench's previous work as a waitress exceeds her RFC. (R. 38). Thus, he concluded that she is unable to perform her past relevant work. (R. 38).

Where, as here, the claimant is unable to resume her past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. This step requires consideration of whether, in light of vocational factors such as age, education, work experience, and RFC, the claimant is capable of other work in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). At this step, the burden of proof shifts to the agency to establish that the claimant retains the RFC to engage in an alternative job which exists in the national economy. McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The agency must prove both the claimant's capacity to perform the job and that the job is available. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). Before the agency may conclude that the claimant can perform alternative skilled or semi-skilled work, it must show

that she possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary. McLain, 715 F.2d at 869.

In cases where a claimant has an RFC that is equivalent to all of the exertional demands at a given level of exertion, an ALJ consults the medical-vocational rules ("grids") which direct a conclusion of "disabled" or "not disabled" depending on the claimant's vocational skills. (SSR 83-11). The grids cannot be used when a claimant's RFC includes non-exertional limitations, unless a finding of "disabled" would be directed without consideration of the non-exertional limitations. (SSR 83-12, SSR 83-14). In this case, ALJ Benitz relied upon the testimony of a VE rather than the grids to determine if there were jobs available in the national economy that Ms. Mench could perform. The VE found that someone with Ms. Mench's RFC, age, education, and prior work experience could work in one of the following jobs: bench worker (380 jobs available locally/24,000 nationally), machine tender (560 jobs available locally/41,000 nationally), grading/sorting worker (650 jobs available locally/43,000 nationally). (R. 39).

Therefore, the ALJ concluded that Ms. Mench had not been under disability since the alleged onset date of January 7, 2007, the adjusted alleged onset date. Id.

**IV. Standard of Review**

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence, not to try plaintiff's claim de novo. King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). It is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962). If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir.

1962). However, despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman, 829 F.2d at 517. The Court has authority under 42 U.S.C. § 405(g) to affirm, modify, or reverse the decision of the agency "with or without remanding the case for a rehearing." Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991).

## V. Discussion

Ms. Mench makes two arguments in support of her position that ALJ Benitz's decision should be reversed or, in the alternative, remanded. Ms. Mench argues that ALJ Benitz did not properly apply the provisions of SSA Acquiescence Ruling ("AR") 00-1(4), because he failed to evaluate the opinion of the prior ALJ in his ruling (even after the Appeals Council directed him to do so), and he did not demonstrate that Ms. Mench's condition had improved in the time since the prior decision. (ECF No. 17-1, 6). Ms. Mench also argues her age category was not properly assigned, and if ALJ Benitz had followed ALJ Banas' opinion and assigned Ms. Mench to the proper age category a finding of "disabled" would have resulted under Rule 201.12 of the grids. Id. The Court does not find either argument persuasive.

### a. ALJ Benitz properly addressed the prior ALJ's decision in his evaluation of Ms. Mench's application, in accordance with AR 00-1(4).

Ms. Mench argues that ALJ Benitz violated AR 00-1(4) by assigning "little weight" to ALJ Banas' prior findings, and that the burden to prove that Ms. Mench's condition had sufficiently improved since the prior findings. Id. Ms. Mench argues that the record indicating her continued treatment of injections and fentanyl patches to treat her back pain were evidence that her condition did not improve between ALJ Banas' decision in January 2007[6] and ALJ Benitz's decision in December 2010. Id.

AR 00-1(4) was written in response to Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999), a ruling dealing with an ALJ's obligations in considering a prior decision on an earlier claim. Under AR 00-1(4), an ALJ "must consider a finding . . . made in a final decision" by an ALJ or Appeals Council on an earlier claim. AR 00-1(4)(emphasis added). More specifically, an ALJ "must consider such finding as evidence and give it appropriate weight in light of all the relevant facts and circumstances when adjudicating a subsequent disability claim." Id.; Harris v. Astrue, 2013 U.S. Dist. LEXIS 39463 (N.D. W. Va. Mar. 21, 2013). To gauge the appropriate weight to give a prior ruling, an ALJ must consider such factors as:

> (1) whether the fact on which the prior finding was
> based is subject to change with the passage of time,

---

[6] ALJ Banas found Ms. Mench to have the ability to perform unskilled, sedentary work that did not require overhead work and allowed her to shift positions as needed. (R. 51).

such as a fact relating to the severity of a
claimant's medical condition; (2) the likelihood of
such a change, considering the length of time that has
elapsed between the period previously adjudicated  and
the period being adjudicated in the subsequent claim;
and (3) the extent that evidence not considered in the
final decision on the prior claim provides a basis for
making a different finding with respect to the period
being adjudicated in the subsequent claim.

Id.

Both <u>Albright</u> and <u>Lively v. Secretary of Health and Human</u>

<u>Services</u>, 820 F.2d 1391 (4th Cir. 1987) illustrate how an ALJ

may consider a prior decision.  In <u>Lively</u>, the plaintiff was

initially denied benefits and categorized as capable of "light"

work.  <u>Lively</u>, 820 F.2d at 1392.  Plaintiff applied again only

two weeks after this original disposition, during which time he

changed age categories.  <u>Id.</u>  Even though plaintiff's new age

category and his first RFC of "light work" would have resulted

in a finding of disability, the ALJ reviewing the second claim

found that claimant was in fact capable of "medium" level of

work, and therefore not disabled.  <u>Id.</u>  The Fourth Circuit

remanded the case, noting that there must have been a

"miraculous" improvement in plaintiff's condition for the ALJ to

reach a finding of "not disabled" at the second hearing.  <u>Id.</u>

Ultimately, the court found that "it is utterly inconceivable

that his condition had so improved in two weeks as to enable him

to perform medium work," and remanded for entry of judgment in

favor of plaintiff.  <u>Id.</u>

Albright, decided twelve years after Lively, considered SSI and DIB applications made approximately six months after an initial denial. Albright v. Commissioner of the SSA, 174 F.3d 473, 474 (4th Cir. 1999). These applications were also denied by the reviewing ALJ. Id. The second denial was founded on Social Security Acquiescence Ruling 94-2(4), which purported to be a codification of the Fourth Circuit's holding in Lively. Id. 94-2(4) mandated that an ALJ must adopt an earlier ruling "unless there is new and material evidence relating" to the claimants disability status. Id.

The Albright Court found that this strict standard was "not an accurate restatement of our decision in Lively." Id. at 478. The Lively decision did not advance a presumption that past decisions are binding, the court found, but instead simply applied the substantial evidence rule to the facts at hand. Id. The Albright court determined that the Lively holding was based on a conclusion that the earlier ruling "was such an important and probative fact to render the subsequent finding to the contrary unsupported by substantial evidence." Id. Albright suggested that the Lively outcome was highly fact dependent, noting that the very short interval between the two applications was the primary reason behind the weight given to the earlier decision. Id. The court noted that where the first decision was more distant, its weight would likely be diminished. Id. at

477 ("Although we might state with some assurance that a claimant's condition very likely remains unchanged within a discrete two-week period, we would grow ever less confident as the time frame expands.").  Because the ALJ's decision was based on a misreading of <u>Lively</u>, Fourth Circuit affirmed the district court's finding in favor of the plaintiff.

The Court finds that the ALJ here properly considered and weighed the prior decision.  In his December 17, 2010 opinion, ALJ Benitz assigned "little weight" to ALJ Banas' prior decision, relying instead on new testimony from Ms. Mench's treating physicians that her depression was controlled by taking Zoloft,[7] her neck and back pain were reduced by spinal injections,[8] and her cardiac symptoms were stable.[9] (R. 26). He also noted that after the prior hearing, numerous examiners and treating physicians found Ms. Mench to be capable of light work,[10] and that an MRI on July 5, 2007 was inconsistent with Ms.

---

[7] In his opinion, ALJ Benitz considers the progression of Ms. Mench's mental health treatment records. Although Dr. Klump reported Ms. Mench's condition to be quite severe in the Medical Assessment of Ability to do Work-Related Activities on November 18, 2008 (Exhibit B-19F), the remainder of the mental health testimony suggests that her mental health issues were controlled and stable through the use of medication prescribed by Dr. Peimer.  <u>See, e.g.</u>, (R. 499, 508, 625, 644, 667, 671, 683, 685).

[8] On October 7, 2010, Dr. Callahan, a treating physician, indicated in the medical record that the injections were providing "significant reduction in pain" for Ms. Mench. R. 713.

[9] On May 27, 2008, Ms. Mench's cardiologist indicated her condition was "clinically stable." R. 532.

[10] ALJ Benitz cites the reports of both medical examiners and treating physicians in the record (Exhibits B-7F, B-8F, B-9F, B-16F, B-17F, B-18F, B-24F, B-25F). R. 26-27.

Mench's description of the severity and intensity of her pain.[11]
(R. 26, 28). The new evidence in the record suggests that Ms.
Mench's limitations had improved since the prior ALJ's ruling,
so ALJ Benitz did not err in assigning little weight to the
prior opinion.

In addition, in Ms. Mench's case there is an un-adjudicated
period of nearly four years. Allen, 2010 U.S. Dist. LEXIS 53298,
at *12-14 (determining the applicable period runs from the date
of the prior ALJ's ruling to the date of the subsequent ALJ's
ruling). AR 00-1(4) specifically indicates that a judge may give
less weight to a ruling "as the period being adjudicated in the
subsequent claim becomes more remote" and cites the Albright
timeline as a supporting example. SSAR 00-1(4). At nearly four
years, the timeline in Ms. Mench's case is even more remote than
the timeline in Albright.[12] It was reasonable for the ALJ to find
that Ms. Mench's ability to work could have, and did, change
between January 7, 2007 (when ALJ Banas found her RFC to limit
her to sedentary work) and December 10, 2010 (when ALJ Benitz
found her able to perform light work).

---

[11] The MRI showed minimal disc bulging but no asymmetric disc herniation,
stenosis or cord or nerve root impingement; minimal posterior displacement of
the nerve root but no nerve compression or stenosis; and multilevel
degenerative disc disease, with only small disc bulges and herniations that
were described by Dr. Peimer as only minimal disease. R. 32.
[12] The un-adjudicated period in Albright "exceed[ed] three years[.]" SSAR 00-
1(4).

Based on the new evidence in the record and the length of time between the prior decision and the subsequent decision, ALJ Benitz did not err in assigning little weight to ALJ Banas' opinion and finding Ms. Mench was able to perform work at a light level of exertion rather than a sedentary level as found in the prior opinion.

### b. ALJ Benitz properly considered Ms. Mench's age.

Ms. Mench's argues that because she turned 50 years old shortly after her second application, ALJ Benitz should have placed her in the "closely approaching advanced age" category because her age was "borderline." (ECF No. 17-1, 6). She further argues that placement in that category, along with an RFC similar to ALJ Banas' original ruling limiting her to sedentary work, would automatically result in a finding of disability based on the grids. Id. The Commissioner argues that there is no borderline age situation, because ALJ Benitz noted that she was in the closely approaching advanced age category in his opinion. In addition, the Commissioner argues the issue is moot because the grids were not (and should not have been) used in this case. (ECF No. 18-2, 26). The Commissioner's arguments are correct.

It appears that ALJ Benitz placed Ms. Mench in the "closely approaching advanced age" category, based on his statement that "the claimant subsequently changed age category to closely

approaching advanced age." (R. 38). Ms. Mench's brief points to this statement, so it is unclear why she argues that the ALJ did not appropriately categorize her age. (ECF No. 17, 6-7). Regardless of Ms. Mench's age category, it would have been improper for ALJ Benitz to consider her age category in the context of the grids to determine her disability, because her RFC included non-exertional limitations. See Grant, 669 F. 2d at 192 (citing 20 C.F.R. Part 404, subpart P, Appendix 2, § 200.00(a, d-e); 20 C.F.R. § 404.1569)(holding because grids do not address non-exertional limitations, they cannot be used if a claimant's RFC includes information not listed in an exertional definition).[13] Ms. Mench's RFC limits her to jobs that involve "low concentration and low memory defined as no decision making requirements, no changes in the work setting, not much judgment, and no production pace work." As a result of these non-exertional limitations, ALJ Benitz properly relied upon VE testimony rather than the grids, and included the proper age considerations in doing so.[14] Accordingly, Ms. Mench's argument is unavailing.

---

[13] There is an exception to this rule; however, Ms. Mench does not fit into it. The grids may be used despite the presence of non-exertional limitations if there would be a finding of disability based on the claimant's exertional limitations alone. SSR 83-12; SSR 83-14. Based on the grids, an individual similar to Ms. Mench who is in the closely approaching advanced age category, has a high school education, and is limited to unskilled light work would not be found disabled. 20 C.F.R. Part 404, subpart P, Appendix 2, § 202.13.

[14] Even if the grids had been the appropriate method of determining Ms. Mench's disability, they would have resulted in a finding of "not disabled," because, as previously discussed in this opinion, the ALJ properly assigned

## VI.  Conclusion

For the foregoing reasons, the Court hereby DENIES
plaintiff's motion for summary judgment, GRANTS defendant's
motion for summary judgment, and AFFIRMS the decision of the
commissioner.


Sincerely yours,

/s/

Susan K. Gauvey
United States Magistrate Judge

---

Ms. Mench an RFC based on a "light" level of exertion. The grids would
indicate a finding of "not disabled" for someone in the closely approaching
advanced age category with Ms. Mench's level of education and the ability to
perform unskilled, light work. <u>See</u> 20 C.F.R. Part 404, subpart P, Appendix 2,
§ 202.13.